NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JONATHAN S. ESTRADA ZAPATA,

                Petitioner,

                v.

TODD LYONS, *et al.*,

                Respondents.

Civil Action No. 25-17669 (MAS)

**OPINION**

**SHIPP, District Judge**

This matter comes before the Court on Petitioner's habeas petition (ECF No. 1) challenging his ongoing immigration detention. Following an order to answer, the Government filed responses to the petition and motion (ECF Nos. 7, 9, 13), to which Petitioner has replied (ECF Nos. 10-11, 14). For the following reasons, Petitioner's habeas petition shall be denied without prejudice.

I.     **BACKGROUND**

Petitioner is a native and citizen of Colombia. (ECF No. 13-1 at 3.) On or about June 14, 2022, Petitioner crossed the United States border without admission or inspection. (ECF No. 1 at 2.) Three days later, and while still in close proximity to the border, Petitioner was taken into custody by immigration officials pursuant to 8 U.S.C. § 1225(b)(1) and processed for expedited removal. (*See* ECF No. 13-1 at 26; ECF No. 9 at 6.) Because Petitioner expressed a credible fear of removal, however, he was referred for removal proceedings before an immigration judge and a final expedited removal order was not entered at that time. (ECF No. 9 at 2, 6; ECF No. 1 at 2.)

Petitioner was thereafter granted humanitarian parole from detention on June 17, 2022, pursuant to 8 U.S.C. § 1182(d)(5)(A). (ECF No. 10-1 at 4.)

On August 19, 2025, Petitioner was taken into custody and placed back into mandatory detention under § 1225(b)(1), where he has remained since that time. (ECF No. 13-1 at 26). While detained, Petitioner was ordered removed by an immigration judge but has since filed an appeal of that order with the Board of Immigration Appeals ("BIA"), which remains pending. (*See* ECF No. 7 at 2-4.)

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2241(c), a federal court has jurisdiction over a habeas petition and habeas relief may be extended to a petitioner only if the petitioner is "in custody" and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

## III.    DISCUSSION

Petitioner challenges his ongoing immigration detention without a bond hearing, which Petitioner contends is unlawful as he should be subject to 8 U.S.C. § 1226(a). The Government contends that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1). An alien who attempts to enter the United States illegally and who is detained shortly after making an unlawful crossing of the border is "treated as an 'applicant for admission'" and subject to the terms of § 1225(b)(1). *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139-40 (2020). As the Third Circuit has explained, "[u]nder 8 U.S.C. § 1225(b)(1) and its companion regulations, two classes of aliens are subject to [detention and] expedited removal [proceedings under § 1225(b)(1)] if an immigration officer determines they are inadmissible due to misrepresentation or lack of immigration papers: (1) aliens 'arriving in the United States,' and (2) aliens 'encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border.'" *Castro v. U.S.*

2

*Dep't of Homeland Sec.*, 835 F.3d 422, 425 (3d Cir. 2016). Aliens subject to § 1225(b)(1) are generally issued an expedited removal order unless they indicate to immigration officers that they have a credible fear of persecution should they be deported, in which case they may be referred for further proceedings regarding that fear. *Id.* Pursuant to the statute, aliens who are taken into custody under § 1225(b)(1) are subject to mandatory detention throughout removal or credible fear proceedings, although the Government may in its discretion temporarily parole such aliens "for urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 287-88 (2018). Detention under the statute remains mandatory until the conclusion of the alien's credible fear or removal proceedings, after which an alien would have a final order of removal, and detention under the statute ends. *Id.* at 300-03.

Section 1226(a) instead provides that an alien subject to removal proceedings "may be arrested and detained pending a decision on whether the alien is to be removed from the United States." When the Government takes an alien into custody under this statute, however, the alien is entitled to seek release on bond through a hearing before an immigration judge at which the alien bears the burden of showing that he is neither a flight risk nor a danger to the community. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 278-79 (3d Cir. 2018). Aliens taken into custody within the United States after having entered and remained in the United States for several years are therefore generally entitled to a bond hearing under the statute. *See, e.g.*, *Aguilar Ramos v. Soto*, No. 25-15315, 2025 WL 3251447 (D.N.J. Nov. 21, 2025).

Here, the parties dispute whether Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). Petitioner was taken into custody a few days after crossing the border while still in close proximity to the border. Petitioner thus appears to fall into the category of aliens encountered within fourteen days of illegally crossing the border and within 100 air miles of the border who are subject to the expedited removal and mandatory detention provisions of

3

§ 1225(b)(1).  *Castro*, 835 F.3d at 425.  Indeed, the Government clearly considered Petitioner subject to the statute as it issued him a determination of inadmissibility on a notice and order of expedited removal form.  (ECF No. 9 at 6.)  That Petitioner was paroled would not change the applicability of section 1225(b)(1) and its mandatory detention requirements.  *See Faqirzada v. Rokosky*, No. 25-16639, 2026 WL 63614, at *2-3 (D.N.J. Jan. 8, 2026).  As this Court explained in *Faqirzada*,

> Even where an alien is granted humanitarian parole prior to a final decision on his removal proceedings, he does not cease being subject to § 1225(b)(1).  As the parole statute makes clear,
>
>> such parole of an alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission.
>
> 8 U.S.C. § 1182(d)(5)(A).  Aliens who are paroled are thus subject to the "entry fiction" in which they are legally considered as if they remained at the border throughout and after their parole until removal or credible fear proceedings conclude.  *See, e.g., Doe v. Rodriguez*, No. 17-1709, 2018 WL 620898, at *6 (D.N.J. Jan. 29, 2018); *see also Pipa-Aquise v. Bondi*, No. 25-1094; 2025 WL 2490657, at *1-2 (E.D. Va. Aug. 5, 2025).  Federal courts generally lack jurisdiction to review the exercise of discretion embodied in the Government's decisions to grant or deny parole.  *See Ashish v. Att'y Gen.*, 490 F. App'x 486, 487 (3d Cir. 2013) (citing 8 U.S.C. §§ 1182(d)(5)(A) & 1252(a)(2)(B)(ii)).

*Faqirzada*, 2026 WL 63614, at *2-3.  Aliens who are paroled from mandatory detention thus remain subject to mandatory determination when their parole is terminated, and upon the Government's discretionary decision to terminate parole are to be returned to custody and detained throughout their proceedings as if they had remained at the border throughout the entirety of their parole.  *Id.; see also Shakibullah Noori v. Soto*, No. 26-951, 2026 WL 631642, at *2 (D.N.J. Mar.

5, 2026) (release on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) requires a return to mandatory detention status when the Government chooses to terminate parole); *Salama v. Soto*, No. 25-18990, 2026 WL 368935, at *2 (D.N.J. Feb. 10, 2026) (alien re-detained after being released on parole remains subject to mandatory detention under 8 U.S.C. § 1225(b)(1)); *Arcos Tasigchana v. Soto*, No. 25-18252, 2026 WL 266170, at *2 (D.N.J. Feb. 2, 2026) (same).

In this matter, Petitioner was taken into custody pursuant to 8 U.S.C. § 1225(b)(1) and was then provided humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). Pursuant to the humanitarian parole statute, he was therefore required to "return or be returned to the custody from which he was paroled" and be treated as any other applicant for admission subject to mandatory detention. *Salem v. Tsoukaris*, No. 25-17414, 2026 WL 458302, at *2 (D.N.J. Feb. 18, 2026). That Petitioner was not taken into custody immediately after his initial parole term of one year ended is immaterial. The Government was free to extend Petitioner's parole as it saw fit and, in any event, the onus under the statute was not only on the Government but also on Petitioner to "return or be returned" to detention when the parole period ended. To the extent Petitioner contends his parole "expired,"[1] Petitioner cannot persuasively dispute his return to custody, which was required by the very nature of his parole. *Id.* Petitioner is therefore properly subject to the mandatory detention provisions of 8 U.S.C. § 1225(b)(1), and his detention under that statute is lawful until such time as his appeal to the Board of Immigration Appeals concludes. *See Jennings*, 583 U.S. at 287, 302-03 (detention

---

[1] Nothing in the parole statute provides a basis for concluding that parole can "expire" and convert into an outright release of the alien if the Government does not formally notify him of an extension of the parole when the initial release term ends. Instead both the parole statute and the parole notice Petitioner was provided indicate that the parole can end with his removal, departure, or the Government's choice to end parole, and the Government has discretion in determining when and how parole concludes. It is thus at best not clear that Petitioner's parole did in any meaningful sense "expire" rather than merely be extended by the Government's choice not to terminate at the one-year mark and immediately return Petitioner to custody. *See* 8 U.S.C. § 1182(d)(5)(A) (stating that parole will end when "in the opinion of [the Government]" the purposes of the parole have been served).

under § 1225(b) remains mandatory throughout required removal or credible fear proceedings). Petitioner's assertion that he is not subject to mandatory detention or is entitled to a bond hearing is therefore without merit.

In addition to his claim that he is not subject to mandatory detention, Petitioner also asserts that his detention has become unduly prolonged and violates his Due Process rights. Courts in this district have long recognized that an alien subject to mandatory detention may be entitled to a corrective bond hearing where the detention becomes so prolonged as to become arbitrary. *See Salem*, 2026 WL 458302, at *3; *Tuser E. v. Rodriguez*, 370 F. Supp. 3d 435, 442 (D.N.J. 2019) (nineteen month detention so unreasonable as to be arbitrary and amounts to a denial of due process); *see also German Santos v. Warden*, 965 F.3d 203 (3d Cir. 2020) (finding that prolonged detention under the similar mandatory detention provision of 8 U.S.C. § 1226(c) can, after considering relevant circumstances, become so prolonged as to warrant a bond hearing where an alien has been detained for an extended period, such as the two-and-a-half-year period at issue for German Santos). Given the interests involved, however, courts have on many occasions found that detention of less than a year under 8 U.S.C. § 1225(b) was not so prolonged as be arbitrary, *see Yacouba T. v. Decker*, No. 18-13879, 2019 WL 1569823 (D.N.J. Apr. 10, 2019) (collecting cases), while periods in excess fifteen months have often been found unreasonable. *Tuser E.*, 370 F. Supp. 3d at 443.

Here, Petitioner has been detained since August 2025, a period of approximately ten months. Given the fact that Petitioner's removal proceedings proceeded on pace, his removal order was issued several months ago, his appeal is currently pending, and detention under the statute is likely to conclude in the near future, the Court finds that that period of detention is not so prolonged as to amount to an arbitrary application of the statute, especially in light of the lack of clear argument addressing the similarity of his current detention to criminal detention, or as to the

responsibility the parties bear for any delay in his underlying removal proceedings.[2] *Yacouba T.*, 2019 WL 1569823, at \*3; *see also German Santos*, 965 F. 3d at 211 (factors to consider in determining lawfulness of continued mandatory detention include the length of detention including the likelihood of lengthy continued detention in the future, the reasons for delay in removal proceedings, and whether the alien's conditions of confinement are "meaningfully different[] from criminal punishment"). Petitioner's ongoing detention does not violate Due Process at this time, and Petitioner's habeas petition must therefore be denied without prejudice.

## IV.   CONCLUSION

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is **DENIED WITHOUT PREJUDICE.** An Order consistent with this Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

[2] The Court notes that Petitioner's detention is nearing the point where, even in the absence of harsh jail-like conditions, Due Process may require a bond hearing. Should Petitioner's detention continue for a considerable period longer and exceed a year without the BIA deciding his appeal, Petitioner would likely then be entitled to a bond hearing under the precedent discussed above. Petitioner is therefore free to file a new habeas petition challenging his prolonged detention to the extent he wishes to present additional facts or arguments as to why his continued detention under 8 U.S.C. § 1225(b)(1) has become so prolonged as to become arbitrary. A new habeas petition may include allegations regarding the similarity of Petitioner's current detention to criminal punishment and the cause for any delay in his removal proceedings.

7